# IN THE COURT OF APPEALS OF IOWA

No. 22-0256
Filed January 11, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MICHAEL JOHN FANGMAN,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, Judge.

A defendant appeals his conviction for third-degree sexual abuse. **AFFIRMED.**

Daniel A. Dlouhy of Dlouhy Law, P.C., East Dubuque, Illinois, for appellant.

Brenna Bird, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**SCHUMACHER, Judge.**

Michael Fangman appeals his conviction for sexual abuse in the third degree. He contends his counsel was ineffective. He also claims insufficient evidence supports the conviction. Fangman's claims of ineffective assistance must be brought in a separate postconviction-relief action. We conclude the conviction is supported by substantial evidence. Accordingly, we affirm.

## I. Background Facts & Proceedings

Fangman's conviction stems from events that occurred the night of November 27, 2020. G.M. was at her friend J.H.'s house. Both J.H. and G.M. were fifteen years old. J.H., two of J.H.'s siblings, her mother, and her step-father, Fangman, age thirty-seven, lived in the home. J.H. testified that Fangman had provided her alcohol, specifically, lemonade flavored vodka and Cayman Jack, a bottled margarita drink, earlier in the day. G.M. also remembered Fangman providing lemonade flavored vodka to them.[1] J.H.'s mother was at work that evening.

After spending some time on social media, J.H. and G.M. began drinking the vodka and other drinks. J.H. testified that she and G.M. finished an entire bottle of vodka and each drank several other beverages. G.M. testified that it was the most alcohol she had ever consumed. J.H. and G.M. both testified that Fangman knew they were drinking because he saw them consuming the alcohol. Fangman informed law enforcement he had provided J.H. alcohol before and that on occasions she stole it from him. On the evening in question, Fangman was

---

[1] The jury returned not guilty verdicts for Counts III and IV concerning supplying alcohol to J.H. and G.M.

playing video games with one of J.H.'s younger siblings in the basement. Fangman continued to play video games by himself after the younger child went to sleep.

At some point in the evening, G.M. shared she was feeling nauseous from the alcohol. J.H. took G.M. to the basement restroom. The restroom shares a wall and ventilation with J.H.'s basement bedroom. After G.M. vomited repeatedly, J.H. requested Fangman's assistance in taking care of G.M. G.M. continued to vomit. Fangman told J.H. she could go to sleep and he would take care of G.M. J.H. left the bathroom.

G.M. testified that after J.H. left, Fangman began to grope her breasts. After that, he began to rub her vagina. Fangman performed oral sex on G.M. and then penetrated her vagina with his penis. G.M. stated that she stared at the ceiling and "was just waiting for it to end." Fangman eventually stopped and left the bathroom. G.M. vomited again and went to sleep in J.H.'s room.

J.H. testified that the next morning G.M. was giggling and informed her, "I fucked your dad." G.M. denied having informed J.H., instead telling a different friend. Two trial witnesses, J.H. and a deputy sheriff who investigated the case, reported that G.M. told many peers at school about what had happened. J.H. stated that G.M. appeared to be boasting about the event and would tell anyone who would listen. When J.H. would attempt to play it off as a joke, G.M. would clarify she was not joking. Another of G.M.'s friends was informed about the event by both G.M. and J.H. He explained that G.M. informed him that she had initiated the intercourse. J.H. eventually sent her step-father, Fangman, a text message

that read: "you fucked my friend in the bathroom." Fangman did not respond to the text.

G.M. informed her mother of Fangman's actions in March 2021. A deputy sheriff interviewed Fangman in April. Fangman largely denied knowing G.M. He also denied any knowledge of the events that took place in November, although he did express some memory of J.H. and a friend drinking together one night.

The State charged Fangman with multiple counts related to the sexual abuse and providing alcohol to minors. He was also charged with two counts of child endangerment, but those charges were severed before trial. The jury found Fangman guilty of sexual abuse in the third degree, in violation of Iowa Code section 709.4(1)(b)(3)(d) (2020); and sexual abuse in the third degree, incapacitation, in violation of Iowa Code section 709.4(1)(d).[2] Fangman appeals.

## II. Ineffective Assistance of Counsel

Fangman contends his trial counsel was ineffective by failing to identify prior inconsistent statements by G.M. and failing to properly prepare a witness. However, we cannot consider claims of ineffective assistance of counsel on direct appeal. *See* Iowa Code § 814.7; *State v. Tucker*, 959 N.W.2d 140, 152 (Iowa 2021) (describing how section 814.7 "diverts all claims of ineffective assistance of counsel to postconviction-relief proceedings and requires they be resolved there in the first instance"). As such, Fangman must pursue his claims in postconviction-relief proceedings. We do not consider his ineffective assistance of counsel claims in this opinion.

---

[2] The convictions were merged for sentencing purposes.

**III.    Sufficiency of the Evidence**

In the sole remaining issue, Fangman claims there is insufficient evidence to support his convictions.  In particular, he emphasizes the inconsistent statements G.M. provided to various people prior to disclosing the abuse to her mother.  He also highlights inconsistencies between G.M.'s testimony and testimony provided by other witnesses, particularly J.H.  He claims G.M.'s testimony was so confused and contradicted that it should be considered a nullity.  *See State v. Smith*, 508 N.W.2d 101, 103 (Iowa Ct. App. 1993).

We review sufficiency of the evidence claims for the correction of errors at law.  *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).  We will uphold the verdict if it is supported by substantial evidence.  *Id.*  "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt."  *Id.*

Substantial evidence supports Fangman's convictions.  G.M. testified that Fangman performed oral sex and penetrated her vagina with his penis.  That testimony is sufficient to establish substantial evidence that Fangman committed a sex act against G.M.  *See State v. Mathis*, 971 N.W.2d 514, 518 (Iowa 2022).  Fangman contends G.M.'s testimony was so contradicted as to be a nullity.  *See Smith*, 508 N.W.2d at 103.  But,

> *Smith* is an outlier case.  It has been criticized in the commentary, and it has not been followed in any sexual abuse case in Iowa since.  The primary flaw in *Smith* is that it is inconsistent with the standard of appellate review of jury verdicts, which requires that the evidence be viewed in the light most favorable to the verdict and which requires deference to the jury's resolution of disputed factual issues.

*Mathis*, 971 N.W.2d at 518. Therefore, as is consistent with our standard of review, "it was for the jury to resolve the conflicts between" the witnesses' testimony. *Id.* And, "[i]nconsistencies and lack of detail are common in sexual abuse cases and do not compel a jury to conclude that the victim is not credible or that there is insufficient evidence to support a guilty verdict." *State v. Donahue*, 957 N.W.2d 1, 11 (Iowa 2021).

In any event, G.M.'s testimony was corroborated. J.H. and G.M. largely agreed about the events leading up to the assault, including what they were doing and the type of alcohol they consumed. In his interview with the police, Fangman vaguely remembered an evening when J.H. and a friend may have been drinking in the fall. He remembered playing video games with J.H.'s younger sibling, which corroborated the girls' testimony about the course of the evening. And when J.H. accused Fangman of having sex with her friend in the bathroom, Fangman did not respond. *See State v. Paredes*, 775 N.W.2d 554, 569-70 (Iowa 2009) (explaining that, in some circumstances, silence in the face of an accusation can be deemed an admission). While there was no physical evidence, such evidence is unnecessary to sustain a conviction. *See Donahue*, 957 N.W.2d at 11 (explaining that a victim's testimony need not be corroborated by other evidence).

We also note that the inconsistencies between G.M.'s testimony and other witnesses' testimony largely related to whom G.M informed about the assault and her demeanor when doing so were put in context by other testimony. Katie Burrell, a forensic interviewer at the Child Protection Center, testified that children frequently inform friends of an assault first and may delay reporting to adults. Moreover, due to a combination of fear of being blamed, not being believed, and

potential repercussions, embarrassment over the assault, and other social pressures, assault victims may try to minimize the event. Sometimes that minimization can come from being flippant, bragging, or joking about the event. And G.M. testified that when she did inform people about the assault, it was because, "I just wanted to let people know, and people would tell a grownup about it." The jury could have interpreted her behavior as consistent with child sexual assault victims. And if the jury believed J.H. and other witnesses' testimony about G.M.'s conduct after the assault., that conduct was not fatal to her testimony implicating Fangman. If anything, it indicated she immediately and repeatedly told her peers about the event and clarified that she was not joking when challenged about the events.

Further, the different reactions attributed to G.M. were irrelevant to the elements of the offenses of which Fangman was charged. Whether G.M. was bragging or claimed to welcome the assault is not relevant to the offense itself—a minor cannot consent to sexual acts with an adult, nor can an intoxicated individual. *See* Iowa Code § 709.4. The jury was well within its rights to disregard the differences in testimony and focus on the elements of the offense. *See Mathis*, 971 N.W.2d 514, 518 (finding contradictions in child victims' testimony was not dispositive in a sufficiency of the evidence challenge because the inconsistencies "[had] no bearing on the children's testimony regarding [the defendant's] abuse").

**AFFIRMED.**